639 P.2d 9

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Jefferson D. HOOD, Defendant-Appellant.**

**No. 13855.**

Supreme Court of Idaho.

Dec. 30, 1981.

G. LaMarr Kofoed, Fruitland, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A. I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

PER CURIAM:

The defendant appeals from a sentence of ten years for aggravated assault on a law enforcement officer. The assault occurred in conjunction with an escape from the Payette County jail in which the defendant and two other inmates threatened a deputy sheriff with the sharpened handle of a spoon and locked him in a cell and escaped from the jail.

The defendant pleaded guilty to the aggravated assault charge, and the court ordered a presentence investigation. The presentence investigation indicated that the defendant, eighteen years of age at the time of the assault, had a rather substantial record as a juvenile and that his attitude and outlook required institutionalization. The psychological report attached to the presentence investigation indicated that the defendant was potentially dangerous to society.

The court sentenced the defendant to an indeterminate term for not to exceed ten years, retaining jurisdiction for 120 days. Upon receiving the report from the Board of Corrections, the court held a hearing on whether or not the court should exercise its retained jurisdiction and grant probation. The defendant was present and testified. Following the hearing, the court concluded that the defendant's anti-social attitude had not been adequately corrected and that the protection of society required that he not be released on probation at that time. Accordingly, the court ordered that the retained jurisdiction be relinquished and the defendant remanded to the custody of the Idaho State Board of Corrections to serve the balance of the sentence.

The defendant has appealed, asserting that the trial court abused its discretion in failing to exercise its retained jurisdiction to modify the original sentence and place the defendant on probation. We have reviewed the record and conclude that no abuse of discretion is disclosed, and therefore we affirm the judgment of the trial court. *State v. Bradac,* 101 Idaho 240, 611 P.2d 1025 (1980); *State v. Stroup,* 101 Idaho 54, 607 P.2d 1328 (1980).

Judgment affirmed.

BISTLINE, Justice, dissenting.

An 18 year old incarcerated in a county jail on a misdemeanor charge of obtaining money under false pretenses falls in with two older fellows and the three of them attempt an escape. Extremely poor judgment on the part of the youth—and the youth is sentenced to serve 10 years in the main yard on his very first felony. It is said that he had a substantial juvenile record, and "indications" are that he is potentially dangerous to society. If this latter be true, one may rest reasonably assured that that potential will be fulfilled by experience gained at the state prison. As to his juvenile record being used as a predicate for sustaining this extremely severe sentence, one can only wonder why the Legislature, in enacting the Youth Rehabilitation Act, prefaced it with I.C. § 16–1801,[1] decriminalized children's conduct which otherwise would be criminal, I.C. § 16–1803, and sought to provide some degree of confiden-

1. "16–1801. Policy.—The policy of the state of Idaho is hereby declared to be the establishment of a legal framework conducive to the constructive judicial processing of children's cases where the child's conduct is in conflict with the law; and the providing of professional assistance to courts handling children's cases, through a coordinated program of rehabilitation, thereby insuring integrated treatment and assistance to communities throughout the state in their programs of prevention and control of juvenile delinquency."

tiality and anonymity, I.C. § 16–1816. Obviously, the legislature believed that offenses committed as a juvenile should be treated differently than offenses committed as an adult, due to the immaturity and lack of experience of those below the age of majority. What does it all amount to then—when a child's delinquencies are used to enhance what ordinarily would be probation or jail time for some other defendant who either wasn't wayward as a juvenile, or who was, but who was not brought into court to become a number and a statistic? To my mind, when a child is no longer treated as a child, his record as a child should be left behind him.

"Escape" is a word which, for reasons unknown to me, creates in law enforcement people and the news media a special kind of excitement. Sometimes in the dullest of affairs, like a trustee taking a walk, the word "escape" is uttered, and suddenly the event is reported everywhere—crowding out worthwhile news.[2] I do not understand it, especially when young people, who in all likelihood do not know the law at all, respond to their natural instincts against confinement and seek to escape *it*—not the toils of the law. If a young person in Vietnam escapes from the confinement of an enemy camp, he is a hero. In fact, if he has an opportunity to escape, but does not, he violates the law of our land. All of which is to say that, while escape is and should be a serious offense, the *motivation* for committing the offense is not terribly complex. There is no need to sensationalize or overreact to the act of escape, as opposed to any other crime.

It is true that young Hood's *escapade*—a word which I use deliberately—did involve the use of a makeshift weapon, but it is not at all clear that Hood was the miscreant who held it; he may have been. That is not the point. In almost any criminal case the prosecutors are vested with a vast discretion in deciding what to charge, and thereafter in deciding to what lesser charge the initial charge will be reduced. Given motivation a failure to have in place a current automobile license sticker, plus a difference of opinions embellished with unwelcome language can even result in a charge of resisting arrest and assaulting an officer. All of which leads me to the view that this case is just a little too much. Hood could as easily have been charged, at the prosecutor's discretion, with escape by one charged with or convicted of a misdemeanor, I.C. § 18–2506,[3] or plain aggravated assault, I.C. § 18–905.

As I said in *State v. Harwood*, 98 Idaho 793, 796, 572 P.2d 1228, 1231 (1977) of that juvenile's sentence on his first felony conviction:

> "Even assuming that juvenile procedures had theretofore failed to help him find himself, and conceding that the public is entitled to some respite from his taking ways, I submit that a commutation of his sentence to county jail time was highly in order. It would be interesting to know now how well he has fared at the State Penitentiary."

The maximum indeterminate sentence of ten years in the state penitentiary for the first felony offense of one who has just barely attained the age of majority, and who was not the instigator of the action, seems unduly harsh. I dissent from the majority's refusal to modify that sentence.

in the penitentiary riot, its reference to that event and comparison of that event with Hood's offense suggests that the two were somehow related—which they were not.

---

2. The sentencing court, in refusing to grant probation at the end of the 120 day retained jurisdiction period, *despite a report from the Board of Corrections recommending probation*, observed that "[i]t is people like you with a tendency towards violence which has interrupted the program of the penitentiary by reason of the riot last week. You pulled your own light riot in Payette County." While the sentencing court recognized that Hood did not participate

3. In *State v. Machen*, 100 Idaho 167, 595 P.2d 316 (1979) the defendant, who was older than Hood and had a substantial prior record, was sentenced to an indeterminate term not to exceed five years for felony escape.