962 P.2d 1026

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Kevin Brent MERWIN, Defendant–Appellant.**

No. 23467.

Supreme Court of Idaho,
Boise, February 1998 Term.

July 1, 1998.

Frederick G. Loats, Coeur d'Alene, for appellant.

Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

TROUT, Chief Justice.

This case involves an appeal from a conviction and sentence for felony injury to a child.

## I.

## BACKGROUND

On July 18, 1995, appellant Kevin Brent Merwin (Merwin) was left to care for his three children from a previous marriage along with the two children of his then girlfriend, now wife, Michelle Buss–Merwin (Buss–Merwin). During the morning, Merwin supervised the children as they played outdoors in a small pool. At 12:28 p.m., Buss–Merwin called home. During the telephone conversation, Merwin said that everything was fine and, in fact, Buss–Merwin reported that she thought she heard one of her children, Alex, a two-year-old boy, talking in the background. The call ended at 12:31 p.m. At 12:44 p.m., Merwin called the Kootenai County 911 emergency number. Merwin reported to the dispatcher that Alex had seemed tired so Merwin had brought him inside. Merwin further stated that while Merwin was changing him from his swim suit into his pajamas, Alex had fallen from the bed and hit his head on the floor. Merwin told the dispatcher that Alex was unconscious and breathing only occasionally. A paramedic was dispatched at 12:46 p.m. While waiting for the paramedic to arrive, Merwin told the dispatcher that Alex was "all limp" and was making a "weird sound." Merwin later reported that Alex had stopped breathing and that Merwin could not detect a heartbeat. The paramedic arrived at 1:08 p.m. The paramedic observed that Alex had no pulse, was not breathing, and was ashen gray in color. The paramedic was able to resuscitate Alex,

who was then airlifted to Sacred Heart Hospital in Spokane. Merwin also told the paramedic that Alex had fallen from the bed.

Upon arrival in Spokane, Alex was examined by Dr. Lee, a specialist in pediatric intensive care, who ordered a CT (CAT) scan. Dr. Lee also consulted with Dr. Harper, a pediatrician who examined Alex on July 19, and Dr. Carlson, a neurologist, who read the CT scan. All three agreed that the CT scan showed bleeding within the skull. Alex died of his injuries on the 19th. An autopsy was performed on July 20 by Dr. Lindholm, a forensic pathologist. Dr. Lindholm pronounced the cause of death as cranial cerebral trauma.

Merwin was charged with felony injury to a child under I.C. § 18–1501(1) and pled not guilty. Merwin filed a motion to dismiss for lack of evidence and a motion challenging the constitutionality of § 18–1501(1) as applied to him. Both motions were denied. Merwin also filed a motion in limine to prevent the prosecution's experts from testifying as to how the injuries were inflicted. The court ruled that the prosecution's experts could testify about the injuries in general, but could not testify that the injuries had to be inflicted injuries.

At trial, Dr. Lindholm testified that the injuries were consistent with the child's head hitting a blunt, stationary object with considerable force. He further testified that it was unlikely that Alex had been hit with something and that there was no evidence that Alex had been shaken or beaten. In other words, the evidence suggested a single blow to the head. At trial, the four medical experts called by the prosecution testified, in response to hypothetical questions, that they thought it highly unlikely a fall from a bed would have resulted in the types of injuries seen in Alex. In response to defense questioning, Dr. Lindholm testified that the ultimate cause of death was due to swelling of the brain, but that all the injuries needed to be considered together in determining the cause of death. Dr. Lindholm also testified that it would take thirty minutes to four hours for brain swelling (edema) to cause respiratory and cardiac arrest. Dr. Lindholm testified, however, that a shock wave

through the brain due to the blow could have also resulted in respiratory and cardiac arrest and that it was impossible to tell whether edema or a shock wave had caused the original respiratory arrest. Another forensic pathologist, Dr. Patterson, who had been retained by Merwin, testified that in his opinion the injuries could have been caused by a fall from a bed.

The jury found Merwin guilty of felony injury to a child. Merwin filed a motion for a judgment of acquittal which was denied. He then filed a motion for reconsideration claiming that the court had applied an unconstitutional standard in assessing the evidence. This motion was also denied. The district court imposed a ten-year sentence with two years fixed, and retained jurisdiction for 180 days. Merwin filed a timely appeal of his conviction and sentence. After the period of retained jurisdiction, the district court, contrary to the recommendation of the Jurisdictional Review Committee, relinquished jurisdiction. Merwin then amended his notice of appeal to include the district court's decision to relinquish jurisdiction.

On appeal, Merwin challenges the district court's denial of his motion for acquittal and his motion in limine. Merwin also argues that the district court erred in allowing the State's expert, Dr. Lee, to testify regarding the possible causes of the head injury and in instructing the jury as to reasonable doubt. Finally, Merwin argues the district court abused its discretion in relinquishing jurisdiction and in sentencing him to ten years with two years fixed.

## II.

### MOTION FOR A JUDGMENT OF ACQUITTAL

"On review of the denial of a motion for a judgment of acquittal, the appellate court exercises free review of the record, taking all inferences in favor of the state, to determine whether there is substantial evidence to support the challenged conviction." *State v. Matthews,* 124 Idaho 806, 813–14, 864 P.2d 644, 651–52 (Ct.App.1993) (citations omitted). "Where there is competent although conflicting evidence to sustain the

verdict, this court cannot reweigh that evidence or disturb the verdict." *State v. Cotton,* 100 Idaho 573, 575, 602 P.2d 71, 73 (1979) (citations omitted). Merwin argues that under this Court's holding in *State v. Holder,* 100 Idaho 129, 594 P.2d 639 (1979), the district court should have granted his motion for a judgment of acquittal. In *Holder,* we held that when guilt is proven by circumstantial evidence, the jury must be instructed to accept any reasonable explanation pointing to the defendant's innocence. In this case, Merwin argues that Alex's injuries could have occurred during an earlier, unobserved fall.

We find this Court's holding in *State v. Randles,* 117 Idaho 344, 787 P.2d 1152 (1990), to be dispositive on this issue. In *Randles,* we held that the *Holder* standard does not apply on review.

> The function of an appellate court with regards to the facts of a case is to determine whether there was substantial and competent evidence supporting the verdict. To require the court at the appellate level to evaluate whether the evidence suggests any reasonable hypothesis which is consistent with the innocence of a defendant already convicted by a jury would be an impermissible usurpation of the role of the trier of fact. Therefore, we hold that the language of the *Holder* instruction is to be applied only at the trial level, and is not an appellate standard of review.

*Randles* at 350, 787 P.2d at 1158.

In reviewing the record we find that the jury's verdict was not without a basis in fact or reason. The State's expert, Dr. Lindholm, testified that it was highly unlikely that a child suffering a head injury as severe as Alex's would not show some signs of the injury, if only crying and complaining of pain. During the telephone call from Buss–Merwin, Merwin reported that everything was fine. At the time of the 911 call, the only indication by Merwin of an earlier injury was Merwin's report that Alex was tired. Later at trial, Merwin testified that Alex had not eaten his lunch and had cried once that morning. Based on this evidence, reasonable minds could conclude that Merwin's hypothesis of an earlier injury causing Alex's death

was unreasonable. Since the jury's verdict was supported by substantial and competent evidence, it would have been improper for the trial judge to substitute his view of the facts for the jury's and grant the motion for a judgment of acquittal.

### III.

### MOTION IN LIMINE

■ A trial court's decision to admit expert testimony is reviewed for abuse of discretion. *Egbert v. Idaho State Ins. Fund,* 125 Idaho 678, 873 P.2d 1332 (1994). Merwin argues that the district court should have granted his motion in limine to prevent the State's experts from testifying as to the causes of Alex's injury. The transcript of the pre-trial hearing, however, shows that the motion was limited by Merwin's counsel to whether the experts could testify that it was impossible for the injuries to have been accidental. The district court ruled that the State's experts could not testify that the injuries had to have been intentionally inflicted and so granted the motion as limited by counsel for Merwin.

■ Merwin also argues that the trial court abused its discretion when it allowed two of the State's witnesses, Drs. Lee and Harper, to testify as experts on head trauma. We find no merit to Merwin's arguments. Dr. Lee was a specialist in pediatric intensive care who had training and experience with children who had suffered severe injuries, including head trauma. Dr. Harper had worked as a pediatrician in the Cook County, Illinois trauma unit. Dr. Harper also had additional training in physical and sexual assault of children. Given the training and background of these witnesses, we do not find that the trial court abused its discretion in allowing them to give expert testimony as to possible causes of the injuries observed.

■ Merwin also claims that the studies relied upon by Drs. Lee and Harper did not meet the standard set forth by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Merwin claims that the studies used by the

State's experts were unreliable because they were case studies instead of controlled experiments and because other studies contradicted their conclusions. We have stated "that the appropriate test for measuring reliability of evidence in this state is I.R.E. 702." *Walker v. American Cyanamid Co.*, 130 Idaho 824, 832, 948 P.2d 1123, 1131 (1997). The trial court's broad discretion in admitting evidence "will only be disturbed on appeal when there has been a clear abuse of discretion." *Id.*

■ The fact that the conclusion from a scientific study is not universally accepted does not preclude use of that study by experts in forming their opinions. The question under the evidence rule is simply whether the expert's knowledge will assist the trier of fact; not whether the information upon which the expert's opinion is based is commonly agreed upon. Even under the holding in *Daubert*, the focus of the court's inquiry is "on the principles and methodology, not on the conclusions that they generate." *Daubert* at 595, 113 S.Ct. at 2797.

Addressing the use of case studies by medical experts, we note the obvious ethical restrictions on conducting planned, controlled trauma studies on human beings. In the present case, the State's experts testified as to why they found the studies used in forming their opinions to be reliable. One factor was that the studies involved falls by children that were either observed by witnesses or occurred in a hospital environment so that the cause of the injury could be reliably determined. Another factor was that the studies were prospective in nature and so specifically designed to determine the extent of injuries suffered by children in falls. In addition, all of the studies had been subjected to peer review, another indication of their reliability. In considering these factors, we conclude that the studies used by the experts possessed sufficient indicia of· reliability to meet the I.R.E. 702 requirements. Applying our standard of review for matters involving judicial discretion, we conclude that the district court did not abuse its discretion by admitting expert testimony based on these studies. *Sun Valley Shopping Ctr., Inc. v.*

*Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

## IV.

## TESTIMONY OF DR. LEE

■ Merwin contends that Dr. Lee violated the district court's order in limine when he testified as to the possible causes of Alex's injuries. The relevant part of Dr. Lee's testimony is as follows:

Q. What is that opinion?

A. This child's injuries to the brain and the retinal hemorrhages were caused by a very high-force impact to the head.

Q. On what do you base that opinion? How did you come to the opinion?

A. The—my training includes studies into the causes of brain injury, and the causes of a—the combination of retinal hemorrhaging and bleeding in the brain are what we call subdural hemorrhages. Those are the result of usually very high impact, high speed automotive accidents or falls from very high heights. Or much more commonly than either of these other two scenarios would be what we call a nonaccidental trauma or child abuse.

Dr. Lee's testimony does not violate the order in limine because he did not testify that the causes listed were the only possible causes of the injuries seen in Alex. Instead, he testified that, based on his training, these were the usual causes of the injuries. Likewise, Dr. Lee's testimony that of the three causes listed, child abuse was the most common also did not violate the order. Again, Dr. Lee did not testify that child abuse was the only cause, but that based on his training it was the most common cause. The purpose of expert testimony is to "assist the trier of fact to understand the evidence or to determine a fact in issue. . . ." I.R.E. 702. If, based on an expert's training, one possible cause is observed with greater frequency than others, this information would be useful to the trier fact. To do otherwise would tend to mislead the fact finder since it would imply that the causes occur with equal frequency, when in fact they do not.

The order in limine, as limited by Merwin's counsel, stated that the experts could not testify that Alex's injuries had to be intentionally inflicted. Because we find that Dr. Lee did not testify that nonaccidental trauma or child abuse was the only possible cause of Alex's injuries, his testimony did not violate the order in limine.

## V.

## JURY INSTRUCTION

Merwin argues that the court committed reversible error when it failed to give either of the Idaho jury instructions for reasonable doubt, but instead substituted an instruction based on the Federal Judicial Center, Pattern Criminal Jury Instruction 21. Specifically, Merwin argues that the use of the phrase "firmly convinced" in the instruction violated his due process rights because it is vague and diminishes the level of proof required of the prosecution. In addition, Merwin contends that the instruction misstates the law when it says that the prosecution is not required to overcome "every possible doubt."

■■■ This Court exercises free review over the question of whether a jury has been properly instructed. *State v. Zichko,* 129 Idaho 259, 923 P.2d 966 (1996). "This Court reviews jury instructions to ascertain whether, when considered as a whole, they fairly and adequately present the issues and state the applicable law." *Id.* at 264, 923 P.2d at 971 (citation omitted). This Court has stated that "the only appropriate instruction on reasonable doubt is the California jury instruction." *State v. Rhoades,* 121 Idaho 63, 82, 822 P.2d 960, 979 (1991) (Johnson, J., concurring and dissenting) (citing *State v. Holm,* 93 Idaho 904, 478 P.2d 284 (1970); *State v. Cotton,* 100 Idaho 573, 602 P.2d 71 (1979)). The California instruction referred to in *Rhoades* was identical to I.C.J.I. 103.[1] Despite the language in *Rhoades,* this Court has not required that reasonable doubt instructions exactly quote I.C.J.I. 103 in order to survive a challenge on appeal. The test on appeal is "whether the instruction that was given to the jury misstated the law or was so

confusing and argumentative as to mislead the jury." *Rhoades* at 82, 822 P.2d at 979 (Johnson, J., concurring and dissenting) (citation omitted). This Court has upheld reasonable doubt instructions which, although differing from I.C.J.I. 103, have correctly stated the law. *See Rhoades* at 76, 822 P.2d at 973; *State v. Sivak,* 127 Idaho 387, 901 P.2d 494 (1995), *cert. denied,* 516 U.S. 1095, 116 S.Ct. 819, 133 L.Ed.2d 763 (1996); *State v. Pratt,* 125 Idaho 546, 873 P.2d 800 (1993); *State v. Hoffman,* 123 Idaho 638, 851 P.2d 934 (1993). We emphasize, however, that any court which varies from jury instructions previously approved by this Court does so at considerable risk that the verdict rendered will be overturned on appeal.

■■■ We first address Merwin's contention that the district court misstated the law when it instructed the jury that the prosecution was not required to overcome every possible doubt. We find Merwin's arguments to be unpersuasive. Idaho Criminal Jury Instruction 103, itself, states that reasonable doubt "is not mere possible doubt." Although worded differently, the instruction given by the district court stated the same legal proposition. That is, the prosecution need overcome only those doubts that are reasonable, not just possible. We therefore find no error.

■■■ We next turn to the use of the words "firmly convinced" in the jury instruction. Merwin claims the use of these words violated due process because the meaning of the words is vague and their use diminished the prosecution's burden of proof. In terms of the federal courts, this question has already been answered. Three federal circuits have approved the instruction given by the district court as correctly defining reasonable doubt. *United States v. Conway,* 73 F.3d 975, 980 (10th Cir.1995); *United States v. Williams,* 20 F.3d 125, 131–32 (5th Cir.), *cert. denied,* 513 U.S. 891, 115 S.Ct. 239, 130 L.Ed.2d 162 (1994); *United States v. Taylor,* 997 F.2d 1551, 1556–57 (D.C.Cir.1993). *See also Victor v. Nebraska,* 511 U.S. 1, 27, 114 S.Ct. 1239, 1253, 127 L.Ed.2d 583 (1994) (Justice Ginsburg concurring, and finding the federal pattern instruction "clear, straightforward, and accurate"). Two additional circuits, while not approving the exact instruction

---

1. Since *Rhoades* was decided, California has changed its jury instruction on reasonable doubt so the Idaho and California instructions are no longer identical.

used here, have held that definitions of reasonable doubt which contain the words "firmly convinced" do not lower the prosecution's burden of proof. *United States v. Velasquez*, 980 F.2d 1275, 1278 n. 1 (9th Cir.1992), *cert. denied*, 508 U.S. 979, 113 S.Ct. 2979, 125 L.Ed.2d 677 (1993); *United States v. Velazquez*, 847 F.2d 140, 143 (4th Cir.1988).

To date, no Idaho appellate court has ruled on the question of whether the use of the words "firmly convinced" to define reasonable doubt violates due process. Two state supreme courts have specifically endorsed the reasonable doubt instruction used by the district court. *Winegeart v. State*, 665 N.E.2d 893, 902 (Ind.1996); *State v. Portillo*, 182 Ariz. 592, 898 P.2d 970, 974 (1995). Three other states, while not considering the exact instruction used in this case, have approved the use of the words "firmly convinced" in a jury instruction on reasonable doubt. *State v. Kreutzer*, 928 S.W.2d 854, 872 (Mo.1996) (en banc.), *cert. denied*, —— U.S. ——, 117 S.Ct. 752, 136 L.Ed.2d 689 (1997); *People v. Matthews*, 221 A.D.2d 802, 634 N.Y.S.2d 235, 236 (1995), *appeal denied*, 88 N.Y.2d 850, 644 N.Y.S.2d 697, 667 N.E.2d 347 (1996); *State v. Van Gundy*, 64 Ohio St.3d 230, 594 N.E.2d 604, 606 (1992). In view of this authority, we cannot say that the instruction given, taken as a whole, misstated the law or misled the jury. In reaching this conclusion, however, we do not endorse the instruction given by the trial court. To the contrary, we continue to recommend that trial court judges use I.C.J.I. 103.

## VI.

### RELINQUISHED JURISDICTION

▬ Merwin argues that the district court abused its discretion when it ignored the favorable report by the Jurisdictional Review Committee and relinquished jurisdiction. A trial court's decision to relinquish jurisdiction is reviewed by this Court for abuse of discretion. *State v. Hood*, 102 Idaho 711, 639 P.2d 9 (1981). "Refusal to retain jurisdiction will not be deemed a 'clear abuse of discretion' if the trial court has sufficient information to determine that a suspended sentence and probation would be inappropri-

ate under [the statute]." *State v. Chapel*, 107 Idaho 193, 194, 687 P.2d 583, 584 (Ct. App.1984) (citation omitted). While a Review Committee report may influence a court's decision to retain jurisdiction, "it is purely advisory and is in no way binding upon the court." *State v. Landreth*, 118 Idaho 613, 615, 798 P.2d 458, 460 (Ct.App. 1990). Idaho Code § 19–2521 sets out the criteria a court must consider when deciding whether to grant probation or impose imprisonment. A review of the record shows that the sentencing judge considered these factors and especially focused on the seriousness of the crime. I.C. § 19–2521(c). "A decision to deny probation will not be held to represent an abuse of discretion if the decision is consistent with [the § 19–2521] standards." *State v. Smith*, 123 Idaho 290, 293, 847 P.2d 265, 268 (Ct.App.1993) (citation omitted). Since the district court weighed the § 19–2521 factors in reaching its decision, it cannot be said that the court abused its discretion in denying Merwin probation.

## VII.

### SENTENCING

▬ Merwin argues that the sentence imposed, ten years with two years fixed, was excessive. Sentencing is reviewed for abuse of discretion. *State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992). "Where reasonable minds might differ as to the sufficiency of time of confinement, the discretion vested in the sentencing court in imposing sentence will be respected." *Id.* at 393, 825 P.2d at 490 (quoting, *State v. Broadhead*, 120 Idaho 141, 814 P.2d 401 (1991)). Merwin has not provided this Court with a transcript of the sentencing hearing. "Where the sentence imposed is within the statutory limits, the appellant has the burden of showing a clear abuse of the court's discretion. To show such error, the appellant must provide this Court with a sufficient record; we will not presume error." *State v. Birrueta*, 101 Idaho 915, 916, 623 P.2d 1292, 1293 (1981) (citations omitted). Because there is no record of the sentencing hearing, this Court can only speculate as to the basis upon which the court imposed the sentence. Since this

Court will not presume error, we affirm the district court's sentence.

## VIII.

## CONCLUSION

For the reasons stated above, the conviction and sentence of the defendant are hereby affirmed.

JOHNSON, SILAK and WALTERS, JJ., concur.

SCHROEDER, Justice, concurring in result.

I concur in the Court's opinion but write separately on two points because they raise concerns for future cases. The first issue concerns Dr. Lee's testimony as it relates to the motion in limine. While his testimony did not violate the letter of the order in limine, it is clear that it violated its spirit and was a blatant attempt—a successful attempt—to substitute advocacy for proper testimony. Initially, of course, his answer was not responsive to the question. He testified that the "child's injuries to the brain and retinal hemorrhages were caused by a very high-force impact to the head." He was then asked two very limited questions: "On what do you base that opinion? How did you come to the opinion?" After a few comments that set forth his background, he departed from the question and volunteered his opinion on what the jury should decide: "Or much more commonly than either of these other two scenarios would be what we call a nonaccidental trauma or child abuse." This is a nonresponsive, gratuitous effort to tell the jury what the order in limine was intended to prevent. He successfully skirted the exact terms of the order, but in the context of the testimony, it is clear that he was telling the jury to discount any accidental causes of the injuries, and he did this as a pioneer, answering a question he wasn't asked. It is a small slice of expert advocacy that is all too familiar in the trial courts. It should be condemned.

I am able to concur in the result in this case on this point because a careful review of the proper testimony leads very strongly to the conclusion that the injuries were not the result of any accident identified by the defendant. The facts and legitimate medical opinions lead to the conclusion reached by the jury. Sadly, this expert did not trust the intelligence and common sense of the jury to reach the conclusion without gratuitous prompting.

My next concern is the use of the "firmly convinced" reasonable doubt instruction given by the trial court. I am "firmly convinced" as a personal interpretation of language that this instruction diminishes the State's burden of proof. But my personal understanding of the words must give way to the significant authority that approves similar language. All language is subject to some individualistic interpretation, but this language seems more subject to that difficulty than most. I am firmly convinced that not many defense attorneys will request this instruction, sensing that some jurors will find a lower threshold of proof in these words than those approved by this Court. I am firmly convinced it should not be used by Idaho courts in the future.