876 P.2d 1151

**STATE of Arizona, Appellee,**

v.

**Martin B. PORTILLO, Appellant.**

**1 CA–CR 91–1463.**

Court of Appeals of Arizona,
Division 1, Department E.

Jan. 25, 1994.

Review Granted on issue 2 and
Denied on issue 1 July 11, 1994.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, and Galen H. Wilkes, Asst. Atty. Gen., Phoenix, for appellee.

John M. Antieau, Phoenix, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

Martin B. Portillo appeals from his convictions for money laundering and conspiracy to sell marijuana. We reverse the conviction for money laundering because the instruction relating to vicarious culpability was incorrect, and because the court failed to give a mere presence instruction. We reverse the conviction for conspiracy to sell marijuana because the instruction defining conspiracy was prejudicially incomplete. We also hold that it was not error to give an instruction defining "reasonable doubt," although we recommend against giving such an instruction in the future. We address a number of other issues which may arise if the case is retried.

### FACTS AND PROCEDURAL HISTORY

The Defendant was one of eleven co-defendants named in an indictment alleging a number of crimes related to a marijuana smuggling operation. He was charged with conspiracy to sell marijuana and money laundering. As the result of plea bargains and scheduling difficulties, Ramon Gonzales Quema, the Defendant's brother-in-law, was the only co-defendant tried with the Defendant. The charges against Quema included two counts of transportation of marijuana, one count of transferring marijuana, and one

count of illegally conducting an enterprise as well as conspiracy to sell marijuana and money laundering.

The trial lasted nearly seven weeks, and most of the evidence pertained to the charges against Quema. It showed that various people imported marijuana from Mexico and distributed it in Arizona and other parts of the United States. Quema was the principal Arizona distributor.

All of the evidence relating to the Defendant concerned acts that occurred in a two-year period beginning in January 1987. An Arizona drug dealer testified that on several occasions when he purchased marijuana, he saw the Defendant help load sealed boxes into the dealer's truck at a stash house. On several other occasions, the Defendant and another person took the dealer's truck and returned it to him filled with sealed boxes of marijuana. In addition, on one occasion, the Defendant and this same person picked up approximately $100,000 from the dealer. Finally, on another occasion, the Defendant was said to have been present when a substantial amount of cash was put in a box and wrapped in decorative paper like a present.

Law enforcement agents described how the Defendant was involved in an attempt to transfer money from Phoenix to El Paso on October 2, 1989. As a result of wiretap surveillance, the agents learned that a large amount of money was going to be paid to bribe Mexican officials to release some seized marijuana. The money was to be shipped to El Paso in a vehicle tire. The agents later observed the Defendant and another man, Fernando Sanchez, take a tire to a nearby service station where Sanchez jumped up and down on the tire while apparently trying to fill it with air. The Defendant stood approximately six feet from Sanchez while he worked on the tire. After the tire was replaced in the vehicle, the Defendant and Sanchez drove east on I–10. The vehicle, which was driven by Sanchez, was pulled over by the agents near Benson and $229,000 in U.S. currency was found in the tire.

The Defendant's defense to both charges was that he was not aware of any criminal activity and that his participation was done without any knowledge that he was assisting marijuana smugglers. Both the Defendant and Quema were convicted by a jury of all the offenses charged. The Defendant was placed on five years probation on both charges and, as a term and condition of probation on count one, ordered confined to the county jail for eight months.

## IT WAS ERROR TO GIVE AN INSTRUCTION BASED ON PINKERTON v. UNITED STATES

Over the Defendant's objection, the trial court gave the following instruction:

A conspirator is liable for all criminal acts committed by a co-conspirator during and in furtherance of the conspiracy.

The instruction is based on *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), which held that a conspirator may be found responsible for crimes committed by a co-conspirator, as long as the acts which constitute the crimes are reasonably foreseeable and are carried out in furtherance of the conspiracy, even though the conspirator did not participate in their commission. Under this instruction, if the jurors believed that the evidence was sufficient to convict the Defendant for conspiracy to sell marijuana, they could have found the Defendant guilty of the substantive crime of money laundering even if they believed that others, and not the Defendant, were aware of the money in the tire.

■ Following the trial in this case, our supreme court, in *State ex rel. Woods v. Cohen,* 173 Ariz. 497, 844 P.2d 1147 (1992), held that *Pinkerton* is not the law of Arizona. It said that for a conspirator to be guilty of a substantive crime committed by a co-conspirator, the evidence must be sufficient to support a finding of guilt as a principal or an accomplice. *Id.* at 501, 844 P.2d at 1151.

The State argues that it was harmless error to give the instruction because the jury might have found the Defendant guilty either of conspiracy as an accomplice or as a principal. The argument is off point. The *Pinkerton* theory of culpability does not concern conspiracy, but culpability for a substantive

offense. In the Defendant's case the substantive charge is money laundering.

Even if the State's argument is applied to the money laundering charge, it fails. The argument is that the conviction should be upheld because there is evidence to support a finding of guilt on a theory of culpability that it was proper for the jury to consider, i.e., that the Defendant was either principal or accomplice to the money laundering. A claim that the jury might have convicted for the right reason is not sufficient. Before we can say that an error is harmless, we must be able to say, beyond a reasonable doubt, that it did not affect the verdict. *State v. Lundstrom*, 161 Ariz. 141, 150, 776 P.2d 1067, 1076 (1989). We cannot say that in this case. Where there is a reasonable possibility that a person has been convicted upon an erroneous jury instruction, the conviction must be reversed. *State v. Johnson*, 155 Ariz. 23, 26, 745 P.2d 81, 84 (1987).

### THE COURT SHOULD HAVE GIVEN A MERE PRESENCE INSTRUCTION

The Defendant requested, and the court refused, the following instruction:

> Guilt cannot be established by the Defendant's mere presence at a crime scene or mere association with another person at a crime scene. The fact that the defendant may have been present does not in and of itself make the defendant guilty of the crimes charged.

The court did, however, give the following instruction, which the State claims was adequate:

> One may become a member of a conspiracy without full knowledge of all the details of the conspiracy. On the other hand, a person who has no knowledge of a conspiracy but happens to act in a way which furthers some object of the conspiracy does not thereby become a conspirator.

The Defendant points out that the instruction the court gave pertains only to the conspiracy charge and did not adequately cover his concept of the defense to the substantive charge of money laundering. We agree. Requested instructions which go to the gist of a defense and which are supported by competent evidence must be given. *State v. Randolph*, 99 Ariz. 253, 256, 408 P.2d 397, 400 (1965).

This case is similar to *State v. Kimbrell*, 294 S.C. 51, 362 S.E.2d 630 (1987). The defendant in *Kimbrell* was present in a house where a drug transaction was taking place. One of the participants in the transaction, as he was leaving the house to show the buyer marijuana which was in a truck outside, told the defendant that there was cocaine in the kitchen and that she should "watch it." The defendant went from the bedroom to the kitchen and, when the participants in the transaction returned to the house, she went back to the bedroom. The Supreme Court of South Carolina reversed a conviction for failure to give a mere presence instruction.

We are aware of one case, somewhat similar to the one before us, in which the failure to give a mere presence instruction was held not to be reversible error. In *United States v. Ferris*, 719 F.2d 1405 (9th Cir.1983), a mere presence instruction was given with respect to a count charging conspiracy to distribute drugs but was refused with respect to a count charging distribution of drugs. The court felt that "in the circumstances of this case" the instructions were adequate. *Id.* at 1407–08. The potential for confusion in *Ferris* was less than it is in the case before us because the facts which supported the charge of conspiracy to distribute and the facts in support of the distribution in *Ferris* overlapped to a greater degree than they do in the case before us. In *Ferris*, proof of one charge tended to prove the other. In the case before us, the two crimes charged are more separate and distinct.

The evidence against the Defendant in our case on the charge of money laundering was not particularly strong, and the mere presence instruction the Defendant requested was the statement of the law which most precisely fit his defense. It should have been given. We reject the State's argument that the requested instruction would have been an improper comment on the evidence.

### THE INSTRUCTION ON CONSPIRACY WAS INCOMPLETE

The Defendant also contends that there was error in the instruction given by

the trial court with respect to the charge of conspiracy to sell marijuana. In instructing the jury on the elements of the conspiracy count, the court stated:

Count one of the indictment charges each defendant with Conspiracy to Sell Marijuana. The crime of Conspiracy to Sell Marijuana requires proof of the following things:

1. That the defendant agreed with one or more persons that one of them or another person would engage in certain conduct; *and,*

2. That the defendant intended to promote or assist the commission of such conduct; *and*

3. That the intended conduct would constitute a crime, whether known or unknown by the defendant to be a crime; *and*

4. That an overt act was committed in furtherance of such conduct.

The Defendant argues that the instruction is deficient in that it fails to limit the criminal conduct which is the subject of the alleged conspiracy to the crime of selling marijuana. We agree.

■ As the Defendant failed to raise any objection to the instructions on this point at trial, our review is limited to an analysis for fundamental error. *State v. Gendron,* 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991). A trial court, however, has a duty to instruct on the law relating to the facts of the case when the matter is vital to a proper consideration of the evidence, even if it is not requested by the defense, and failure to do so constitutes fundamental error. *State v. Avila,* 147 Ariz. 330, 337, 710 P.2d 440, 447 (1985).

■ In the present case, the instruction on the elements necessary for a conviction for conspiracy, considered in the light of the other instructions and the case as a whole, was inadequate. Conspiracy, like the other preparatory offenses of attempt and solicitation, must be viewed and considered in connection with an underlying substantive offense. In the instant case, the intended underlying offense as set forth in the indictment was selling marijuana. Ariz.Rev.Stat. ("A.R.S.") § 13-3405(A)(4). Notwithstanding

the need for the jury to find beyond a reasonable doubt that Defendant agreed to commit this substantive offense in order to convict, the jury was never instructed on the elements of this offense. Thus, we have a situation similar to that in which a defendant is charged with the crime of attempted first-degree murder and the jury is instructed solely on the elements of an attempt as set forth in A.R.S. section 13-1001 without any instructions as to what constitutes first-degree murder. In short, the jury was simply left to speculate whether whatever conduct it found Defendant had agreed to constituted the substantive offense that is the alleged object of the conspiracy.

■ Since the elements of selling marijuana are relatively simple, and since there was ample evidence of such sales, we have considered whether the error was harmless. In an effort to determine whether the incomplete instruction may have had an influence on the outcome of the trial, we have reviewed the final arguments to the jury. The prosecutor's argument had a real potential to confuse the issue. For example, he argued as follows:

If Martin Portillo, who is the brother-in-law and apparently a close brother-in-law, you have seen pictures of them together. You have heard about them being together from the various witnesses. If Martin Portillo doesn't understand that when his drug dealing brother-in-law asks him to load boxes onto trucks of his biggest drug dealing customer, and he is asked to secrete those U-Haul boxes with mattresses and debris, and he doesn't understand he is counting money from Oscar Henrich, the career drug dealer. And he doesn't understand that when he's fooling with tires and loading them with a guy by the name of Freddie Sanchez in the house of and coming from the house of Grandville Chavez, a career drug dealer, that money is in the tire and that that money is drug money, then by God Mr. Miller has noticed the wrong defense. He has. The defense isn't mere presence. The defense is insanity. Because he has to be a functioning moron.

Given the open-ended conspiracy instruction, which permitted a conviction for con-

spiracy to sell marijuana from an agreement to commit any undefined crime, the jury could have found Defendant guilty of conspiracy to sell marijuana by finding that he agreed to commit some other criminal conduct such as money laundering. Defendant, however, was not charged with conspiracy to commit money laundering. To compound the possibility of confusion, there was evidence of other crimes committed by Quema and others who were not on trial. To further compound the problem, the erroneous *Pinkerton* instruction might have had a bearing on how the jury deliberated on this issue. We cannot say, beyond a reasonable doubt, that the jury might not have used the evidence relating to the charge of money laundering or other crimes to convict the Defendant of conspiracy to sell marijuana. The error was fundamental and is grounds for reversing the conviction of conspiracy to sell marijuana.

## IT WAS NOT ERROR TO DEFINE REASONABLE DOUBT

 The trial judge, over the objection of the defense, defined "reasonable doubt" as follows:

> The term "reasonable doubt" means doubt based upon reason. This does not mean an imaginary or possible doubt. It is a doubt which may arise in your minds after a careful and impartial consideration of all of the evidence or from the lack of evidence.

The Defendant argues that the definition, with its reference to "possible doubt" dilutes the State's burden of proof. Two recent Arizona cases which have discussed this instruction have concluded that it is *not* fundamental error to give it. *See State v. West,* 176 Ariz. 432, 862 P.2d 192 (1993); *State v. Duzan,* 176 Ariz. 463, 862 P.2d 223 (App. 1993). Earlier decisions have approved the instruction, or one substantially similar to it. *See State v. Mays,* 105 Ariz. 47, 49, 459 P.2d 307, 309 (1969); *State v. White,* 160 Ariz. 24, 31–32, 770 P.2d 328, 336–37 (1989); *State v. Salazar,* 173 Ariz. 399, 408, 844 P.2d 566, 575 (1992). In the recent decision of *Sullivan v. Louisiana,* — U.S. —, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Supreme Court of the United States considered a definition of

reasonable doubt which included language similar to that given in this case and also included other, far more egregious, language which the Court concluded violated the defendant's right to due process of law. While the focus of the defendant's objection in *Sullivan,* and of the Court's attention in that case, was not on the "possible doubt" language which the Defendant objects to here, the Supreme Court made no reference to the "possible doubt" language as suspect. We have found no case which holds that it is error to give the instruction complained of, and we decline to hold that it is error.

A number of courts and legal scholars have concluded that attempts to define reasonable doubt are not helpful to the jury. *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954) (quoting *Miles v. United States,* 103 U.S. 304, 312, 26 L.Ed. 481 (1880)); *accord Dunbar v. United States,* 156 U.S. 185, 199, 15 S.Ct. 325, 330–31, 39 L.Ed. 390 (1895); *State v. Duzan,* 176 Ariz. 463, 469, 862 P.2d 223, 229 (App.1993). *See also* Robert D. Bartels, *Punishment and the Burden of Proof in Criminal Cases: A Modest Proposal,* 66 Iowa L.Rev. 899, 900–01 (1981); Charles R. Nesson, *Reasonable Doubt and Permissive Inferences: The Value of Complexity,* 92 Harv.L.Rev. 1187, 1197 (1979), 9 John Henry Wigmore, Evidence § 2497 at 408–09 (Chadbourn rev. 1981). The American Law Institute has omitted any definition of reasonable doubt from its Model Penal Code in the view that definition can add nothing helpful to the phrase. Model Penal Code § 1.12 cmt. 2 (1985). Because we agree that the attempt to define reasonable doubt adds nothing useful, we recommend that trial courts not give this instruction in the future.

## THE EVIDENCE OF MONEY LAUNDERING WAS SUFFICIENT

The Defendant argues that the trial court erred in not granting a motion for judgment of acquittal on the money laundering charge. He argues that the money found in the spare tire was still "circulating in the conspiracy" and thus, was not the kind of "racketeering proceeds" to which the money laundering

statute applies. Specifically, the Defendant asserts that the money was still as "dirty" as ever and had not been "laundered."

 The Defendant's argument relies too heavily on the title of the offense. Arizona Revised Statutes section 13–2317(A)(1) states:

A person is guilty of money laundering in the second degree who [a]cquires or maintains an interest in, transacts, transfers, transports, receives, or conceals the existence or nature of racketeering proceeds knowing or having reason to know that they are the proceeds of an offense.

As the statutory language makes clear, there is no requirement that money be "laundered" before the offense comes into existence. A person may be found guilty of "money laundering" solely by transporting the proceeds of a requisite offense, irrespective of whether the proceeds are still "dirty." Crimes involving marijuana are included among the various offenses in the definition of "racketeering proceeds." A.R.S. § 13–2301(D)(4)(k). Since there was substantial evidence to show that the funds found in the tire were derived from the sale of marijuana, the trial court properly denied the Defendant's Motion for Acquittal. *See* Ariz. R.Crim.P. 20(a) (acquittal appropriate only where "there is no substantial evidence to warrant a conviction").

## THE "GUILT OR INNOCENCE" INSTRUCTION WAS NOT REVERSIBLE ERROR

The court instructed the jury:

It is no defense to the crime charged against the defendants that another person or persons not now on trial might have participated or cooperated in the crime. You should not guess the reasons for the absence from the courtroom of such other person or persons. The only matter before you for your decision is the guilt or innocence of Ramon Gonzales Quema and Martin Burciaga Portillo.

 The Defendant, who did not object to this instruction, argues that it was fundamental error to give it because, to refer to the matter for decision as the "guilt or

innocence" of the Defendant, denigrates from the concept that the State must prove the Defendant's guilt beyond a reasonable doubt. We conclude beyond a reasonable doubt that this subtle nuance did not influence the verdict in this case. The jury was clearly and repeatedly instructed on the State's burden of proof. For that reason, we do not find that fundamental error occurred.

We note, however, that any presumption which places the burden of proving innocence on the defendant violates due process of law. *Norton v. Superior Court,* 171 Ariz. 155, 157, 829 P.2d 345, 347 (App.1992). While the instruction given in this case did not switch the burden of proof, on retrial, to avoid whatever slight potential it may have to dilute the burden of proof, the instruction should be reworded to tell the jurors that the only issue before them is whether the evidence establishes the Defendant's guilt.

## IF THE DEFENDANT WANTED AN INQUIRY INTO JURY MISCONDUCT, HE WAS REQUIRED TO REQUEST ONE

 At one point during jury deliberations, but at a time when the jury was not in the jury room, the attorneys for both defendants saw a cake in the jury room decorated with the words:

Court is adjourned. Guilty or not guilty? Who cares? Lets get out of here.

The Defendant moved for a mistrial, alleging jury misconduct. The judge denied the motion, saying:

Let me make an observation. I agree with Mr. McVey. We all agree that this was a long trial. Just my impression, my own personal opinion has been that this has been a good jury, in the sense that they have been punctual. They have been, I think, attentive during the proceedings. And I was concerned about yesterday's closing argument phase, that they might, because we were working them pretty hard, you know, lose attention and they didn't. They were glued to you guys right up to the end of the case yesterday at five-thirty, and it seemed like even more so as the day went on.

They impressed me as a jury who understands the importance of their position, and the significance of their obligations and duties as jurors, as it relates to both the State and the other parties, the defendants.

I wish that hadn't been done, but without more I'm not going to grant a mistrial. So the motion for mistrial is denied.

The Defendant did not request the judge to question the jurors to determine anything else about the cake or the jurors' attitudes towards their service on the jury. While the words on the cake suggest that some member or members of the jury might not have taken their duty seriously, it reveals no specific animus against the Defendant or his position in the case. The inscription on the cake may have been nothing more than a transient, if inappropriate, attempt at levity.

The Defendant argues that the judge should, on his own, have inquired further of the jurors to determine whether this incident reflected any real problem. We disagree. This situation is very similar to what happened in *State v. McDaniel*, 80 Ariz. 381, 298 P.2d 798 (1956), in which a prominent newspaperman had said to one of the lawyers for the defense, in the presence of at least five jurors, "I do not like the company you keep." The defense moved for a mistrial, contending that the remark referred to either the defendant or to other counsel for the defense, and was prejudicial. The State contended that the remark was nothing more than a joke that had nothing to do with the trial. The trial court denied the motion for a mistrial without investigating the incident or the effect the remark might have had on the jurors. As in the case before us, the Defendant had not requested an investigation. The supreme court rejected the Defendant's argument, noting that prejudice will not be presumed but must appear affirmatively from the record. The point is, any party who wants the jurors questioned should request the court to do so.

The verdicts and judgments of guilt are reversed, the sentences vacated, and this matter is remanded to the trial court for further proceedings.

CLABORNE, P.J., concurs.

VOSS, Judge, concurring:

I concur in the result but decline to join the majority's recommendation that trial courts not give the "reasonable doubt" instruction in the future.

Many Arizona courts have looked at this instruction. None have concluded it is error, fundamental or otherwise, to give the instruction. To me, that fact leaves with the trial court the decision of whether or not to give the instruction.