898 P.2d 970

**STATE of Arizona, Appellee,**

v.

**Martin Burciaga PORTILLO, Appellant.**

**STATE of Arizona, Appellee,**

v.

**Mario Marquez TERCERO, Appellant.**

**Nos. CR–94–0155–PR, CR–94–0326–PR.**

Supreme Court of Arizona,
En Banc.

June 29, 1995.

Grant Woods, Atty. Gen., by Paul J. McMurdie, Colleen L. French, Galen H. Wilkes, Phoenix, for State of Ariz.

John M. Antieu, Phoenix, for Martin Burciaga Portillo.

Dean W. Trebesch, Maricopa County Public Defender by Paul J. Prato, Phoenix, for Mario Marquez Tercero.

Lewis and Roca by Edward F. Novak, Cynthia A. Coates, Phoenix, for amici curiae, Ariz. State Bar Bd. of Governors, Ariz. Attys. for Crim. Justice.

Stephen G. Udall, Apache County Atty., St. Johns, Alan K. Polley, Cochise County Atty., Bisbee, Jack M. Williams, Graham County Atty., Safford, Dennis L. Lusk, Greenlee County Atty., Clifton, Richard M. Romley, Maricopa County Atty., Phoenix, Melvin R. Bowers, Jr., Navajo County Atty., Holbrook, Gilberto V. Figueroa, Pinal County Atty., Florence, M. Jan Smith–Florez, Santa Cruz County Atty., Nogales, Charles R. Hastings, Yavapai County Atty., Prescott, David S. Ellsworth, Yuma County Atty., Yuma, Kerry G. Wangberg, Phoenix City Prosecutor, Phoenix, Lowell D. Hamilton, Mesa City Prosecutor, Mesa, Tobin Sidles, Oro Valley Town Atty., Oro Valley, Bruce W. Bowers, Phoenix, Ariz. Pros. Attys. Advisory Council Amici Curiae.

## OPINION

FELDMAN, Chief Justice.

Defendants Martin Portillo and Mario Tercero were convicted of various crimes in separate, unrelated trials. Over defense objection in both cases, the trial court gave an instruction defining the term "reasonable doubt."[1] Concluding that the instruction was not improper, the court of appeals affirmed Tercero's conviction by memorandum decision. *State v. Tercero*, No. 1 CA–CR 93–0348, mem. dec. at 8 (Ariz.Ct.App. July 26, 1994). In Portillo's case, the court of appeals similarly found no error in giving the instruction, although it reversed his conviction on other grounds. *State v. Portillo*, 179 Ariz. 116, 121, 876 P.2d 1151, 1156 (App.1994).

1. The instruction in each case read:

The term reasonable doubt means doubt based upon reason. This does not mean an imaginary or possible doubt. It is a doubt which may arise in your mind after a careful and impartial consideration of all the evidence or from the lack of evidence.

The Note to Recommended Arizona Jury Instructions Standard Criminal 5 (1989) ("RAJI 5") suggests this definition as an "optional" reasonable doubt instruction.

That court, however, went on to say that because "the attempt to define reasonable doubt adds nothing useful, we recommend that trial courts not give this instruction in the future." *Id.* We granted a petition for review filed by Tercero and the state's petition for review in *Portillo,* consolidated the cases for oral argument and decision,[2] and permitted supplemental and amicus briefs on the following issues:

> 1. Should trial judges be required to instruct the jury on the meaning of reasonable doubt?
>
> 2. If trial judges are so required, what instruction or definition would be appropriate?

We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## DISCUSSION

### A. Constitutional Standards

■ It is well established that the Due Process Clause protects criminal defendants against conviction "except upon proof beyond a reasonable doubt" of every element of the crime charged. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970).[3] The Federal Constitution, however, apparently neither requires nor prohibits trial courts from defining the term "reasonable doubt." *Victor v. Nebraska,* —— U.S. ——, ——, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994). The sole requirement is that the trial court accurately instruct the jury on the "concept" that the state has the burden to prove the defendant guilty beyond a reasonable doubt. *Id.* The Supreme Court has deferentially reviewed the substance of reasonable doubt definitions and will find error only if there is a reasonable likelihood that the jury in fact understood the instruction to permit conviction based on proof below the reasonable doubt standard. *Id.; see also*

*Cage v. Louisiana,* 498 U.S. 39, 41, 111 S.Ct. 328, 329, 112 L.Ed.2d 339 (1990) (disapproving definition that suggested a higher degree of doubt than is required for acquittal). If an instruction improperly reduces the state's standard of proof, such error is structural and cannot be harmless. *Sullivan v. Louisiana,* —— U.S. ——, —— – ——, 113 S.Ct. 2078, 2082–83, 124 L.Ed.2d 182 (1993).

■ Within these broad constitutional parameters, therefore, state courts are free to decide whether to define reasonable doubt and, if so, the content of such a definition. We note initially that the RAJI 5 reasonable doubt instruction given in these cases adequately conveyed the state's burden of proof and thus fully complied with due process requirements. The Supreme Court, in fact, has explicitly held that essentially identical definitions do not offend federal concepts of due process. *Victor,* —— U.S. at ——, ——, 114 S.Ct. at 1249, 1251. As a matter of state law, we turn then to the larger questions whether and how Arizona trial courts should define reasonable doubt in the future. *See Pool v. Superior Court,* 139 Ariz. 98, 108, 677 P.2d 261, 271 (1984).

### B. To Define, or Not to Define …

Defendants and some of the amici argue that the meaning of reasonable doubt is self-evident and that efforts to define it lead only to confusion or even dilution of the state's burden of proof. The state disagrees, claiming that jurors often do not understand the bare words "reasonable doubt," and urges that we exercise our supervisory authority under Ariz. Const. art. 6, §§ 3 and 5 to require trial courts to give the RAJI 5 definition in all cases. Both sides cite and our own research reveals a litany of court decisions, empirical studies, and scholarly commentaries supporting their disparate claims.[4]

---

2. *See* Ariz.R.Civ.App.P. 8(b).

3. The origin and history of the reasonable doubt standard have been well documented and we need not repeat them here. We commend to the interested reader, however, Anthony A. Morano, *A Reexamination of the Development of the Reasonable Doubt Rule,* 55 B.U.L.REV. 507 (1975).

4. *Compare Lansdowne v. State,* 287 Md. 232, 412 A.2d 88, 93 (App.1980) (requiring that reasonable doubt be defined in all cases) *with United States v. Glass,* 846 F.2d 386, 387 (7th Cir.1988) (stating that reasonable doubt should not be defined, the term must speak for itself) *and United States v. Velasquez,* 980 F.2d 1275, 1278 (9th Cir.1992) (district courts have discretion whether to define reasonable doubt). *See generally* Note, *Reasonable Doubt: To Define, or Not to Define,* 90 COLUM.L.REV. 1716 (1990) (summarizing authorities).

This court has long recognized the significance of the reasonable doubt standard of proof, repeatedly emphasizing that trial judges must give a reasonable doubt instruction, both orally and in writing, after the close of evidence. *State v. Johnson,* 173 Ariz. 274, 275–76, 842 P.2d 1287, 1288–89 (1992) (reversing conviction because trial court did not orally reinstruct jury on reasonable doubt after closing arguments); *State v. Jackson,* 144 Ariz. 53, 54, 695 P.2d 742, 743 (1985); *State v. Kinkade,* 140 Ariz. 91, 94–95, 680 P.2d 801, 804–05 (1984). We have never required, however, that such instructions *define* reasonable doubt or contain any particular language. *State v. Bracy,* 145 Ariz. 520, 535, 703 P.2d 464, 479 (1985). Indeed, our territorial predecessor long ago cautioned that "explanations of reasonable doubt confuse more than they make clear." *Territory v. Barth,* 2 Ariz. 319, 326, 15 P. 673, 676 (1887) (Porter, J., concurring). Nevertheless, we conclude now that the better practice is for trial courts to always give a uniform instruction defining reasonable doubt.

Proof beyond a reasonable doubt has "traditionally been regarded as the decisive difference between criminal culpability and civil liability." *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979). It follows naturally, we think, that the meaning of such a fundamental concept should not be left either to chance or the random, ad hoc interpretation of different trial courts and counsel. Studies show that jurors in fact often misunderstand instructions in general and the meaning of reasonable doubt in particular. *See, e.g.,* Walter W. Steele & Elizabeth G. Thornburg, *Jury Instructions: A Persistent Failure to Communicate,* 67 N.C.L.REV. 77, 88–94 (1988); David U. Strawn & Raymond W. Buchanan, *Jury Confusion: A Threat to Justice,* 59 JUDICATURE 478, 480–82 (1976). Significantly also, regularly defining reasonable doubt reduces the number of mistrials, saving scarce judicial and public resources. Norbert L. Kerr & Robert S. Atkin, *Guilt Beyond a Reasonable Doubt: Effects of Concept Definition and Assigned Decision Rule on the Judgments of Mock Jurors,* 34 J. PERSONALITY & SOC. PSYCHOL. 282, 285–286 (1976) (finding that fewer hung juries result when reasonable doubt is defined). Thus, in line with what we believe is the majority and sounder view, we conclude that the "issue is simply too important to mention and not to explain." John S. Siffert, *Instructing on the Burden of Reasonable Doubt,* 8 U. BRIDGEPORT L.REV. 365, 367 (1987).

Those who would not define reasonable doubt, like the court of appeals in *Portillo,* argue that attempts to do so may only further confuse jurors or even lower the state's standard of proof. *See Portillo,* 179 Ariz. at 121, 876 P.2d at 1156. Those assertions, however, appear to rely too heavily on "undocumented observations that attempts to define 'beyond a reasonable doubt' do not usually ... mak[e] it clearer." Siffert, *supra,* at 366. Opponents also assume, erroneously in our view, that no definition can accurately clarify the meaning of reasonable doubt. *See Portillo,* 179 Ariz. at 121, 876 P.2d at 1156. Concededly, courts and commentators have struggled to agree on a single clarifying definition. That fact, however, cuts in favor of defining the term, not against it. If judges and legal scholars struggle to define reasonable doubt, it is unrealistic to expect a lay jury to properly grasp and apply the stark words. As one distinguished jurist and advocate of defining reasonable doubt recently said, "it [is] rather unsettling [to think] that we are using a formulation that we believe will become less clear the more we explain it." Jon O. Newman, *Beyond "Reasonable Doubt",* 68 N.Y.U.L.REV. 979, 984 (1993). Like many others, we are confident that reasonable doubt can be defined in simple terms that will neither confuse nor mislead the jury. *E.g., Victor,* —— U.S. at ——, 114 S.Ct. at 1254 (Blackmun and Souter, JJ., concurring).

Much of the confusion about defining reasonable doubt likely stems from the multiple and varying definitions courts have developed over the years, some of which justify the criticism that definitions can distort its meaning. *E.g., Cage,* 498 U.S. at 40, 111 S.Ct. at 329 (doubt must be founded "upon a real tangible substantial basis" and such "as would give rise to a grave uncertainty"). *See generally* Irene M. & Yale L. Rosenberg,

*"Perhaps What Ye Say Is Based Only on Conjecture"—Circumstantial Evidence, Then and Now,* 31 Hous.L.Rev. 1371, 1408–10 (1995) (summarizing various definitions). Lacking clear guidance from this court, Arizona courts that have defined reasonable doubt have typically but not uniformly used the RAJI 5 formulation. *Compare State v. West,* 176 Ariz. 432, 444 n. 3, 862 P.2d 192, 204 n. 3 (1993) (RAJI 5) *and State v. Mays,* 105 Ariz. 47, 49, 459 P.2d 307, 309 (1969) ("doubt that would cause a reasonable man to pause or hesitate when called upon to act upon the most important affairs of life").[5] Allowing varying definitions, however, detracts from the goal of a uniform and equal system of justice. Use of a standard definition thus will eliminate confusion and foster fairness for defendants, the state, and jurors alike. As noted above, the fact that some errors involving reasonable doubt definitions are structural and cannot be deemed harmless also favors requiring Arizona courts to use a single, uniform instruction.

Pursuant to our supervisory authority and revisory jurisdiction under Ariz. Const. art. 6, §§ 3 and 5, therefore, we instruct that in every criminal case trial courts shall give the reasonable doubt instruction that we set forth below.

## C. The Appropriate Definition

■ Arizona courts have traditionally given the RAJI 5 definition of reasonable doubt, which, as noted, satisfies due process and does not provide these or any other defendants in past cases a basis for claiming error. Arguably, however, that definition is somewhat unclear to the extent that it suggests jurors cannot consider "possible doubt[s]" about the evidence. After reviewing several alternatives, we believe that the following variation of the Federal Judicial Center's proposed definition most fairly and accurately conveys the meaning of reasonable doubt:

The state has the burden of proving the defendant guilty beyond a reasonable doubt. In civil cases, it is only necessary to prove that a fact is more likely true than not or that its truth is highly probable. In criminal cases such as this, the state's proof must be more powerful than that. It must be beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him/her guilty. If, on the other hand, you think there is a real possibility that he/she is not guilty, you must give him/her the benefit of the doubt and find him/her not guilty.

*See* Federal Judicial Center, PATTERN CRIMINAL JURY INSTRUCTIONS 17–18 (Instruction 21) (1987). We agree with Justice Ginsburg that this instruction "surpasses others . . . in stating the reasonable doubt standard succinctly and comprehensibly." *Victor,* — U.S. at —, 114 S.Ct. at 1253 (Ginsburg, J., concurring). We believe that its consistent use will assist jurors, be fair to both the state and defendants, and obviate the need for any future appeals on this issue.

### DISPOSITION

To ensure that the reasonable doubt standard of proof continues to serve its "vital role in the American scheme of criminal procedure," *Winship,* 397 U.S. at 363, 90 S.Ct. at 1072, we require as a matter of state law that commencing no later than January 1, 1996 Arizona trial courts give the reasonable doubt instruction set forth in Part C of this opinion in every future criminal case. Al-

---

**5.** The "hesitate to act" standard was aptly criticized as a "misplaced" analogy by a committee of federal judges reporting to the Judicial Conference of the United States. *See Victor,* — U.S. at —, 114 S.Ct. at 1252 (Ginsburg, J., concurring); *see also Roberts v. State,* 17 Ariz. 159, 164, 149 P. 380, 381–82 (1915) (recommending definition from *Commonwealth v. Webster,* 59 Mass. (5 Cush) 295, 320 (1850) (reasonable doubt exists if jurors "cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge")). This, of course, attempts to define a difficult concept—reasonable doubt—by using another concept even more difficult to define. See comments on "moral certainty" standard in *Victor,* — U.S. at —, 114 S.Ct. at 1251 (Kennedy, J., concurring) and *id.* at 1252 (Ginsburg, J., concurring).

though the RAJI 5 instruction comports with the Due Process Clause, we disapprove its further use.

Because the trial court in *Tercero* did instruct on reasonable doubt and because the court of appeals correctly held that the instruction given in these cases did not violate due process, we affirm defendant Tercero's convictions. To the extent it is inconsistent with this opinion, we vacate the court of appeals' opinion in *Portillo*. *See* 179 Ariz. at 121, 876 P.2d at 1156.

MOELLER, V.C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.