NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DUANE DEE LANE, *Appellant.*

No. 1 CA-CR 16-0812
FILED 7-31-2018

Appeal from the Superior Court in Maricopa County
No. CR2015-124790-001
The Honorable Joan M. Sinclair, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

The Nolan Law Firm PLLC, Mesa
By Todd E. Nolan, Cari McConeghy Nolan
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Jon W. Thompson joined.

---

**B R O W N**, Judge:

¶1   Duane Dee Lane appeals his convictions and sentences for one count of aggravated assault and five counts of endangerment. He argues the trial court erred by (1) not striking a biased juror during voir dire; (2) admitting improper character and other act evidence; (3) denying his motion for judgment of acquittal; (4) precluding evidence of a medical defense; (5) improperly instructing the jury on reasonable doubt; and (6) relying on improper aggravating factors at sentencing. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2   In the early afternoon, Lane was driving over 50 miles per hour when he rear-ended a Kia automobile stopped at a traffic light, injuring his passenger and the five occupants of the Kia. One of the young children in the Kia's back seat was seriously injured.

¶3   A detective interviewed Lane and noticed signs of impairment. Officers then obtained samples of Lane's urine and blood, subsequent testing of which revealed the presence of a heroin metabolite, morphine, amphetamine, and methamphetamine. Lane admitted he took "two pain pills" the morning of the collision.

¶4   The State charged Lane with one count of aggravated assault, a class 2 dangerous felony (Count 1), and five counts of endangerment, class 6 dangerous felonies (Counts 2-6). For Counts 1 to 5, the jury found Lane guilty as charged and, during the aggravation phase of trial, found the offenses involved the use, threatened use or possession of a deadly weapon or dangerous instrument during the commission of the crime and that the offense resulted in the infliction or threatened infliction of serious physical injury. For Count 6, the endangerment charge relating to Lane's passenger, the jury found Lane guilty of the lesser-included offense of misdemeanor endangerment. The court imposed a slightly aggravated sentence for the aggravated assault conviction, presumptive sentences for the four felony

endangerment convictions, and a terminal disposition for the misdemeanor based on time served. Lane timely appealed.

**DISCUSSION**

### A.     Failure to Strike Prospective Juror

¶5          During voir dire, prospective juror 28 and the trial court had the following exchange:

> PROSPECTIVE JUROR: My husband was hit by a driver some years ago, and that driver just took off, and we don't know who that was. My husband has since passed away, not based on that, but I'm a widow.
>
> Also a while back we had the back of our mailboxes just totally ripped off and there was a credit card coming from the bank at the time. Bottom line is somebody got our credit card, had a beautiful $45,000 wedding. You can see all the point of sales where they went through and spent.
>
> THE COURT: I'm sure it was lovely. Was anyone ever charged with either of those things?
>
> PROSPECTIVE JUROR: No.
>
> THE COURT: Okay. Either of those incidents make it difficult for you to be fair and impartial?
>
> PROSPECTIVE JUROR: Possibly. I'm not sure.
>
> THE COURT: Okay. In what way?
>
> PROSPECTIVE JUROR: The car, I think the car accident, the hitting, person not stopping is difficult.
>
> THE COURT: Okay. Okay.

Lane argues the court reversibly erred by failing to sua sponte strike Juror 28. According to Lane, the juror's experience involving a traffic accident reflected her inability to be fair and impartial, and her comments established a presumption of prejudice.

¶6          Here, Lane had the opportunity to address whatever purported error arose during voir dire in connection with Juror 28. At the very least, his counsel could have questioned Juror 28 about her comments

to the court, but failed to do so. Lane did not request that the court excuse Juror 28 for cause, nor did he use a peremptory strike to remove her. Lane also passed the jury panel, which included Juror 28. He has therefore waived his challenge to the court's selection of Juror 28. *See State v. Rubio*, 219 Ariz. 177, 181, ¶ 12 (App. 2008) (holding that a defendant "waives any error" if he or she does not "use an available peremptory strike to remove an objectionable juror whom the trial court has refused to remove for cause"); *see also State v. Smith*, 228 Ariz. 126, 128, ¶ 7 (App. 2011) (explaining that the waiver rule articulated in *Rubio* also applies when the defendant fails to object to a juror).

¶7            Waiver aside, Lane has not established fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20 (2005). Juror 28's statement that her prior experiences could "[p]ossibly" make it difficult for her to be fair, without more, does not establish a presumption of prejudice. *See State v. Bible*, 175 Ariz. 549, 573 (1993) (concluding that no fundamental error occurred when the trial court did not sua sponte strike several jurors who "indicated that, for one reason or another, they would find it difficult but not impossible to be fair and impartial"). Moreover, given the lack of follow-up questioning, Juror 28 was not afforded the opportunity to state whether she could render a fair verdict, *see id.*, but she provided an implicit indication she could be fair when she did not raise her hand after the court asked if there was "anyone who would be unable to follow the law as given." Lane has thus failed to meet his burden of showing he was prejudiced when the trial court did not sua sponte strike Juror 28.

## B.      Impeachment Evidence

¶8            During trial, Pretrial Services[1] reported that Lane had violated curfew, failed to submit to drug testing and participate in substance abuse treatment, and admitted to using methamphetamine on two occasions while trial was pending. When Lane subsequently testified, defense counsel asked him whether he was "honest" when he admitted to the investigating detective he had smoked methamphetamine the day before the traffic accident. Lane responded as follows:

---

[1]      Pretrial Services, a division of Adult Probation, monitors a defendant's compliance with their conditions of release pending trial.

Yes, I told him, I said, yeah, I was at a party, you know. A bunch of boilermakers, you know.[2] We were all –- some were not partying, but some are, you know. It was just time off when we're not working. And, yes, I did take some meth, yeah. I smoked some of it. And I didn't like it.

And you know, like, man, I remember those days, you know. Bad memories, you know. And that's about it, you know. I wasn't going to drink. He offered me a drink, and I said, "I don't drink anymore."

When defense counsel subsequently asked Lane whether he had "done meth more than just that day," Lane responded, "Oh, of course, yes. I mean –- I mean, in the past, yes."

¶9          Based on the foregoing testimony, the prosecutor requested the court's permission to impeach Lane on cross-examination with his admission to Pretrial Services that he used methamphetamine while trial was pending. Over Lanes' objection on grounds he did not "open the door" to the State's proffered evidence, the trial court granted the motion. Accordingly, Lane acknowledged during cross-examination that he twice used methamphetamine a month before trial commenced.

¶10         Lane argues the trial court erred in allowing the State to present evidence of his methamphetamine use while on release. He contends his direct examination testimony "in no way opened the door for discussion about pretrial services alleging that [Lane] had recently ingested meth." We review the court's ruling for an abuse of discretion. *See State v. Hausner*, 230 Ariz. 60, 78-79, ¶ 73 (2012).

Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness.

Ariz. R. Evid. 608(b)(1).

---

2          Lane was an apprentice boilermaker; thus, the reference to "boilermakers" appears to allude to Lane's co-workers.

¶11        Because Lane testified on direct that he "didn't like" methamphetamine and his drug use was "in the past," the State could, under Rule 608, permissibly inquire into Lane's recent use of methamphetamine to challenge his credibility. *See Fridena v. Evans*, 127 Ariz. 516, 520 (1980) ("The truthfulness and veracity of a witness is always material."). Despite his assertion to the contrary, Lane opened the door to this line of inquiry. *See State v. Lopez*, 107 Ariz. 214, 217 (1971) (concluding defendant opened door to impeachment of his credibility when he denied ever being previously arrested). The court did not abuse its discretion.

¶12        Lane also argues admission of his recent drug use was error under Arizona Rule of Evidence 404(b).[3] Because Lane did not raise Rule 404 as a basis for his objection, we review for fundamental error. *See State v. Lopez*, 217 Ariz. 433, 434-35, ¶ 4 (App. 2008).

¶13        Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Ariz. R. Evid. 404(b). The court did not admit evidence of Lane's recent drug use to show he acted in conformity with a character trait. The evidence was admitted to impeach Lane's credibility. No error, fundamental or otherwise, occurred.

## C.    Medical Defense

¶14        During a break in proceedings prior to Lane's testimony, the State sought a ruling precluding "any type of testimony that might hint at some type of medical defense." The State informed the court that, although Lane disclosed the possibility of such a defense, he had not disclosed any medical diagnoses he would raise or an expert who would provide supporting evidence. The court asked whether Lane "anticipate[d] going in that direction, and Lane responded, "No." Based on Lane's response, the court granted the State's request.

---

[3]    Although Lane mentions Arizona Rule of Evidence 403 as an additional basis for challenging the court's ruling, he develops no argument. We therefore do not address the admissibility of the evidence under Rule 403. Ariz. R. Crim. P. 31.10(a)(7)(A) (requiring opening brief to contain "appellant's contentions with supporting reasons for each contention, and with citations of legal authorities . . . on which the appellant relies"); *State v. Lindner*, 227 Ariz. 69, 70 n.1, ¶ 3 (App. 2010) (finding waiver because defendant "summarily refers" to issues in his opening brief and "fail[s] to argue them").

**¶15** Lane argues the court's ruling amounts to fundamental error. We do not address the merits of this argument, however, because to the extent the court erred, Lane invited the error. *See State v. Pandeli*, 215 Ariz. 514, 528, ¶ 50 (2007) (finding invited error because the trial court asked defense counsel whether he "objected to the child molestation testimony and he explicitly stated that he did not"). Moreover, we would be unable to review Lane's argument because he did not make an offer of proof regarding a medical defense. *See State v. Kaiser*, 109 Ariz. 244, 246 (1973) ("As a general rule evidence cannot be reviewed on appeal in the absence of an offer of proof.").

### D. Portillo Instruction

**¶16** Lane argues the trial court committed fundamental error by instructing the jury on reasonable doubt pursuant to *State v. Portillo*, 182 Ariz. 592 (1995). The court did not err. Our supreme court has repeatedly upheld the *Portillo* instruction and has instructed trial courts to use the instruction in every criminal case. *State v. Dann*, 220 Ariz. 351, 365, ¶ 65 (2009). Even if we were inclined to do so, we have no authority to overrule our supreme court's decision on this matter. *State v. Paredes-Solano*, 223 Ariz. 284, 292, ¶ 23 (App. 2009).

### E. Sufficiency of Evidence

**¶17** Lane argues the superior court erred in denying his motion for a judgment of acquittal regarding the felony endangerment convictions. *See* Ariz. R. Crim. P. 20. We review the sufficiency of evidence de novo. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at ¶ 16 (quotation omitted). "Substantial evidence . . . is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *Id.* (quotation omitted). "Both direct and circumstantial evidence should be considered in determining whether substantial evidence supports a conviction." *Id.*

**¶18** With respect to the four victims in the Kia, Lane contends the evidence did not sufficiently prove he "recklessly endanger[ed] [them] with a substantial risk of imminent death." *See* A.R.S. § 13-1201(A) ("A person commits endangerment by recklessly endangering another person with a substantial risk of imminent death or physical injury."). We disagree.

¶19            All the occupants of the Kia were transported to local hospitals. The father of two of the three young children in the back seat, R.D. and J.D., was driving the Kia, and the impact caused him to briefly "black[] out." When he regained consciousness as the car rolled through the intersection, he stopped the vehicle. The driver's door would not open so he climbed out the window and tried "to get everybody out of the car [because he] was afraid it was going to catch on fire." He suffered a fractured spine and a concussion. A third child in the back seat, the three-year-old aggravated assault victim, suffered a severe head injury requiring emergency brain surgery.

¶20            Further, an officer from the vehicular crimes unit ("VCU") who investigated the crime scene testified the airbag control module on Lane's vehicle revealed he was traveling 52 miles per hour when, without braking, he impacted the back of the Kia, which was stopped at a red light. Upon impact, the Kia suddenly lurched from a standstill to 49 miles per hour and proceeded almost 160 feet into the intersection. Consistent with the expert testimony, eyewitnesses described hearing a "really loud . . . big, huge . . . crash," after observing Lane driving "really, really fast." Significantly, the VCU officer testified that, based on the amount of force involved, he was "shock[ed] there wasn't a fatality in this crash." Thus, the State presented sufficient evidence to prove that Lane placed all of the Kia's occupants in actual substantial risk of imminent death. *See State v. Carreon*, 210 Ariz. 54, 63, ¶ 39 (2005) ("[A] defendant places a person in substantial risk if he places the victim in *actual* substantial risk of imminent death.") (quotation omitted).

¶21            The jury could also reasonably conclude that Lane acted recklessly. *See* A.R.S. § 13-105(10)(c). The State can prove recklessness by showing that the defendant "was aware of and consciously disregarded the risk" or "was unaware of the risk he created solely due to his voluntary intoxication." *State v. Brown*, 168 Ariz. 481, 483 (App. 1991). Here, Lane was traveling 52 miles per hour—12 miles per hour over the speed limit— when he did not attempt to stop as he approached the red light. Lane admitted that he "wasn't really paying attention to the road" and that he was "count[ing] down just mentally in [his] head [that] it's going to turn green." He explained he did not "brake at all" or "slow down" because he thought the light would turn green by the time he entered the intersection. That conduct by itself could reasonably be considered reckless.

¶22            Finally, the jury could reasonably find that Lane behaved recklessly by driving while under the influence of both a stimulant and a narcotic analgesic, thus rendering him unaware of the risk posed by his driving. Passersby who stopped to offer assistance immediately after the

accident described Lane as "acting really weird," "jumpy, but sort of calm, too," and as if "he just didn't seem like he was there . . . it was like he didn't care about anything." As noted, the drug recognition expert who interviewed Lane later that day recognized multiple cues of impairment, and blood and urine tests revealed the presence of various drugs in Lane's system at the time of the incident. The expert opined that based on Lane's noticeable impairment, he could not safely operate a motor vehicle the day of the collision.

¶23        Based on the foregoing, substantial evidence supports Lane's felony endangerment convictions. Thus, the trial court properly denied Lane's Rule 20 motion.

### F.        Aggravating Factors

¶24        After the guilt phase of the trial, the court instructed the jury regarding the aggravation phase and counsel presented oral arguments to the jury. The jury found that the felony offenses involved the use of a dangerous instrument and the infliction of serious physical injury.

¶25        Lane argues the trial court erred by relying on improper factors to impose an aggravated sentence for the aggravated assault conviction. He contends (1) the State was obligated to present "additional evidence" at the aggravation phase beyond what the jury heard at the guilt phase; and (2) the dangerousness factor used to aggravate the sentence was improper because dangerousness is an element of aggravated assault.[4] Because Lane did not raise these issues in the trial court, we review for fundamental error. *State v. Trujillo*, 227 Ariz. 314, 317, ¶ 9 (App. 2011).

¶26        As a preliminary matter, we reject Lane's unsupported contention that the State was required to present additional evidence to the jury to meet the burden of proving aggravating factors. The jury that rendered the guilty verdicts was the same jury that found the aggravating factors at the subsequent hearing. *See State v. Roseberry*, 210 Ariz. 360, 369, ¶ 47 (2005) (stating that "neither the State nor the defense presented any new evidence because the aggravation jury was the same jury that heard the guilt-phase evidence"). Therefore, the jury could properly rely solely

---

[4]        Lane also argues the sentences for the endangerment convictions were "improper[ly] . . . aggravated." As noted, however, the sentences for the endangerment convictions were presumptive, not aggravated, terms. Therefore, we do not address the purported impropriety in aggravating the endangerment sentences.

on the evidence presented during the guilt phase to render its verdicts regarding the aggravating factors. *See id.* at ¶¶ 48, 51.

¶27      Regarding the jury's dangerous instrument finding, it would have been error for the court to impose the aggravated sentence based on that finding because use of a dangerous instrument is an element of the aggravated assault conviction. *See* A.R.S. §§ 13-701(D)(2) (prohibiting use of a deadly weapon or dangerous instrument to enhance sentence "if this circumstance is an essential element of the offense of conviction"), -1204(A)(2) (listing, as one of the circumstances in which assault becomes aggravated assault, the use of "a deadly weapon or dangerous instrument"). But the record does not show that the court relied on the dangerousness finding to impose an aggravated sentence for the aggravated assault conviction. Although Lane argues to the contrary, the jury's serious physical injury finding was a proper aggravating factor the court could consider because *serious physical injury* was not an element of the crime as stated in the final jury instructions; the State only needed to prove *physical injury*. *See* A.R.S. §§ 13-1203(A)(1), -1204(A)(2). Thus, Lane fails to meet his burden of establishing any error occurred, much less fundamental error.

## CONCLUSION

¶28      Based on the foregoing, we affirm Lane's convictions and sentences.

