## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 46679

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: May 22, 2020 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| BRANDON M. THOMPSON, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Order relinquishing jurisdiction, <u>reversed</u>; and <u>case remanded</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Chief Judge

Brandon M. Thompson appeals from the district court's order relinquishing jurisdiction and denying his motion for reduction of his sentence. Thompson asserts the district court abused its discretion when it required Thompson to obtain and pass a polygraph and once Thompson did so, relinquished jurisdiction because the polygraph examiner did not ask Thompson the specific question the district court wanted addressed. Thompson also claims the district court erred when it denied his Idaho Criminal Rule 35 motion.

For the reasons set forth below, we vacate the district court's order relinquishing jurisdiction and remand this case for a determination before a different judge as to whether Thompson's sentence should be suspended and he should be placed on probation.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Thompson was charged with two counts of felony injury to child, Idaho Code § 18-1501(1),[1] and he pleaded guilty to the charges. At the sentencing hearing, the district court expressed concern about Thompson's manipulative behavior and statements the district court believed were lies. Referring to Thompson's statement that he had permission from the victim's mother to have sexual intercourse with the victim, the district court stated:

> You took a polygraph, but you didn't take a polygraph on your lie and I find it to be a lie that your victim's mother authorized this. I find that too sick and twisted to believe. And you've maintained it with police--you have maintained it with the police--or the presentence investigation report.

The district court also said: "Had you been a man and admitted that you've been lying all along on that, you probably would have a different looking sentence. But you sit here and maintained [sic] your lie."

For each charge, the district court imposed a unified sentence of ten years, with four years determinate, with the sentences running consecutively. The district court then retained jurisdiction and recommended a sex-offender assessment group, followed by sex-offender treatment. At the hearing, the district court also directed Thompson to take a polygraph examination.[2]

The district court then articulated its expectations for Thompson to be placed on probation at the end of the period of retained jurisdiction:

> I expect you to follow their rules. If you can't then I will impose your prison sentence, and I will relinquish jurisdiction without even bringing you back up here. We'll just have a telephonic hearing, and you'll serve your time. So, you've got to follow their rules.
> Number 2. You've got to be assessed and admit what you've done on all fronts and come back with a report and a polygraph that shows me that you're truthful on all these issues.
> So, if you're not polygraphed, if you don't come clean about what you lied and told about the mother, and pass a polygraph as to what the truth is about that issue, I won't listen. You'll just go to prison.

---

[1]     Thompson was initially charged with lewd conduct with a minor under sixteen, Idaho Code § 18-1508, but the State later amended the charge.

[2]     The district court explained the polygraph requirement at the end of the hearing. However, the district court's judgment of conviction does not include any language requiring a polygraph examination.

During the rider, Thompson successfully completed sex-offender treatment, but no polygraph was offered as part of that treatment. Consequently, Thompson was unable to obtain a polygraph during his rider. At the first jurisdictional review hearing, the district court again expressed concern about Thompson's lies and again directed Thompson to complete a polygraph examination. The district court stated:

> You lied about the victim's mother, saying that she said it was okay, and you didn't dispute that in court on November 2nd. You sat here and maintained your lie. I told you that you were a manipulative and frightening person. . . . You have to be assessed and admit what you've done. You will also need a polygraph and pass it. It's up--as far as the mother giving you permission as you claimed at sentencing. It's up to you to clear all this up. If you can't, you will go to prison.

Although the district court ordered a polygraph, Thompson objected to the district court's order that he take a polygraph on the issue of whether he lied about having the victim's mother's permission to engage in sexual intercourse with the victim. After the State granted Thompson immunity for statements made during the court-ordered polygraph examination, Thompson agreed to submit to a polygraph examination. During the pre-test interview, Thompson explained his criminal conduct to the polygraph examiner, including why he believed he had permission from the victim's mother. In addition to Thompson's disclosures during the interview, Thompson was specifically asked during the polygraph: (1) "Did you tell [victim]'s mother that you were under 18 years of age?"; (2) "Did you text with [victim]'s mom and lie about your age?"; and (3) "Did you lie about being under 18 to [victim]'s mother?" Thompson answered "No" to the three questions, and the examination results stated: "No Deception Indicated."

The district court held a second jurisdictional review hearing, during which the district court relinquished jurisdiction and imposed the original sentence. Thompson filed a motion for reconsideration of his sentence pursuant to I.C.R. 35. The district court issued a memorandum decision and order denying Thompson's I.C.R. 35 motion. Thompson timely appeals.

## II.

## STANDARD OF REVIEW

The decision to place a defendant on probation or whether, instead, to relinquish jurisdiction over the defendant is a matter within the sound discretion of the district court and will not be overturned on appeal absent an abuse of that discretion. *State v. Hood*, 102 Idaho 711, 712, 639 P.2d 9, 10 (1981); *State v. Lee*, 117 Idaho 203, 205-06, 786 P.2d 594, 596-97 (Ct.

3

App. 1990).  When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court:  (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason.  *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

### III.

### ANALYSIS

**A.      The District Court Erred When It Relinquished Jurisdiction**

Thompson argues the district court abused its discretion in two alternate ways.  First, Thompson argues that the district court abused its discretion because it never specifically ordered that Thompson be tested on the alleged lie, only that he undergo a polygraph examination and be truthful during that exam.[3]  Thompson claims he was not required to answer a specific question and consequently, the question was not asked.  He asserts he cannot be held responsible for not answering a question the polygraph examiner never asked, and therefore, the district court imposed a condition to probation that was outside of Thompson's control.  Alternatively, Thompson argues that even if he was specifically required to address the narrow issue of why he believed he had permission from the victim's mother, he did so in the pre-test interview when he explained why he believed he received permission.  According to Thompson, because the pre-test interview was part of the examination and was addressed in the polygraph, Thompson complied with the court's order and, therefore, the district court erred in concluding Thompson had not been tested on the issue.

In response, the State argues the district court relinquished jurisdiction on grounds other than a single lie regarding the mother's permission.  The alternate grounds for relinquishing

---

[3]      It is unclear what purpose was served by ordering the polygraph evaluation in this case.  First, the polygraph was not relevant to determine Thompson's risk to the community because both the Idaho Department of Correction (Department) and the State had already assessed that risk and recommended that Thompson be placed on probation.  Second, the polygraph was unrelated to any treatment requirement.  Thompson was required to participate in and successfully complete sex-offender treatment.  Thompson did so.  No treatment provider required or recommended that Thompson take an additional polygraph examination as part of his treatment.  Because the polygraph was not relevant either to assess risk or to facilitate treatment, the record provides no information as to what information (and the value of the information) would be provided to the district court.

jurisdiction, according to the State, were that Thompson was manipulative and a danger to the public.

Thompson relies on two cases to support his argument that the district court abused its discretion when it relinquished jurisdiction: *State v. Reed*, 163 Idaho 681, 417 P.3d 1007 (Ct. App. 2018) and *State v. Le Veque*, 164 Idaho 110, 426 P.3d 461 (2018). In *Reed*, the defendant successfully completed a period of retained jurisdiction, and the Idaho Department of Correction (Department) and the State recommended Reed be placed on probation. *Reed*, 163 Idaho at 683, 417 P.3d at 1009. At the rider review hearing, the district court ignored the recommendations and focused instead on two conditions the court imposed on Reed: (1) to complete a polygraph examination about sex offenses, and (2) to enroll in a treatment program. *Id.* When asked why he did not enter a treatment program, Reed explained he could not afford the program. *Id.* Reed later filed a motion for a redisposition hearing to clarify that Reed did not complete the polygraph because he was asserting his Fifth Amendment right. *Id.* at 683-84, 417 P.3d at 1009-10. The district court relinquished jurisdiction nonetheless. *Id.* at 684, 417 P.3d at 1010.

In *Reed*, this Court reversed the district court's order relinquishing jurisdiction. *Id.* at 687, 417 P.3d at 1013. We held it was error when, after Reed asserted his Fifth Amendment right, the district court nonetheless relinquished jurisdiction because Reed failed to participate in a polygraph examination and failed to answer questions about an unrelated sex offense. *Id.* at 686, 417 P.3d at 1012. In addition, it was error for the district court to require Reed to enroll in a treatment program, which was an impossible prerequisite due to the cost of the program. *Id.* at 686-87, 417 P.3d at 1012-13.

In *Le Veque*, after the terms of probation were violated, the district court revoked probation, ordered Le Veque to serve the previously suspended sentence, and retained jurisdiction for up to one year. *Le Veque*, 164 Idaho at 112, 426 P.3d at 463. The district court's order contained the following statement: "The Court specifically recommends sex offender treatment after he fully discloses his involvement in his South Dakota crime, and that his disclosure is verified with a polygraph." *Id.* Once Le Veque completed a substance abuse program, the Department and the State recommended that he be placed on probation. *Id.* at 112-13, 426 P.3d at 463-64. Nonetheless, the district court relinquished jurisdiction because Le Veque had not completed the polygraph as directed by the court. *Id.* at 113, 426 P.3d at 464.

5

The Idaho Supreme Court held the district court abused its discretion when it relinquished jurisdiction. *Id.* at 117, 426 P.3d at 468. The Supreme Court found the language in the district court's order did not have the specificity and definition necessary to be considered an order directing Le Veque to obtain a polygraph examination. *Id.* at 116, 426 P.3d at 467. Furthermore, the Supreme Court determined the district court relinquished jurisdiction for arbitrary reasons. Not only was the polygraph recommendation arbitrary, but the Supreme Court explained "the district court made other arbitrary decisions at the relinquishment hearing that help inform our conclusion that it abused its discretion in relinquishing jurisdiction over Le Veque."[4] *Id.* at 117, 426 P.3d at 468. The Supreme Court concluded: "[T]he district court abused its discretion when it relinquished jurisdiction over Le Veque solely because he failed to follow an ambiguous recommendation from the court." *Id.*

In this case, although the district court addressed what it characterized as Thompson's manipulative and dangerous behavior at sentencing, the court did not relinquish jurisdiction on those bases. At the relinquishment hearing, the district court stated: "You continue to be dishonest. You've been given the opportunity to be honest on multiple occasions and still can't find it within yourself to do that, and those are the reasons why I'm relinquishing jurisdiction." The district court focused specifically on Thompson's statement that he received permission from the victim's mother to have sexual intercourse with victim. The district court explained this lie was the reason for relinquishing jurisdiction, and it did not present this finding as an alternate ground, as the State argues. Thus, the issue before this Court was whether the district court reached its decision to relinquish jurisdiction based on an exercise of reason. We hold that it did not.

At sentencing, the district court simply told Thompson that he had to admit what he had done as part of a polygraph examination and he had to pass the polygraph. At the first jurisdictional review hearing, the district court expressed concern that no polygraph examination had been completed and again directed Thompson to complete a polygraph examination. The

---

[4] For instance, the district court originally recognized the Department's primary role in supervising the defendant. *State v. Le Veque*, 164 Idaho 110, 117, 426 P.3d 461, 468 (2018). Later, for no clear reason, the district court changed its position and determined the Department would have trouble supervising the defendant. *Id.* The Department placed the defendant in a substance abuse program but not a sex-offender treatment program, and the district court did not give deference to the Department's recommendation. *Id.* It was also unclear the purpose that would have been served by requiring the defendant to complete a polygraph examination. *Id.*

6

district court did not make clear that the polygraph examiner was to ask specific questions; only that Thompson: (1) take a polygraph and "come clean about what you lied" about; and (2) clear up any statements about the mother giving permission.

The polygraph report indicates a pre-test interview was conducted, followed by the administration of a polygraph examination. During the pre-test interview, Thompson explained to the polygraph examiner that Thompson had a conversation through text messaging with a person the victim said was her mother. In that electronic conversation, the person Thompson believed to be the victim's mother acknowledged that she knew how old Thompson was and gave permission to date the victim. Because birth control was also discussed, Thompson believed the mother understood he and the victim were engaging in sexual intercourse. Thompson also thought the victim had conveyed to her mother Thompson's age. He also acknowledged to the polygraph examiner that he did not independently verify that his electronic conversation was with the victim's mother. Thompson's version of events was consistent with information in the psychosexual evaluation that indicated when the victim was interviewed by the police, she discussed her contacts with Thompson and disclosed that her mother knew Thompson's age.

During the exam, Thompson answered "No" to the following questions: (1) "Did you tell [victim]'s mother that you were under 18 years of age?"; (2) "Did you text with [victim]'s mom and lie about your age?"; (3) "Did you lie about being under 18 to [victim]'s mother?" The examiner concluded: "I formed the opinion that, Brandon Thompson was being truthful on the above relevant questions." The examination results on the polygraph stated: "No Deception Indicated."

Although the district court was displeased that Thompson was not directly questioned about his statements regarding the victim's mother, like in *Le Veque*, the district court had not specifically articulated which questions the polygraph examiner should ask. Because the district court's order was unclear about the specific questions to be asked during the polygraph, it was an abuse of discretion to relinquish jurisdiction pursuant to the district court's ambiguous order.

To the extent the district court required Thompson to come clean about his basis for believing he had permission from the mother to engage in intercourse with the victim, Thompson did so. Thompson explained his reason for believing he had permission during the pre-test interview, and the polygraph examiner concluded that Thompson did not indicate any deception

7

during the polygraph. Moreover, the district court relied on and accepted other parts of the pre-test interview, such as Thompson admitting he had lied to the victim's father about Thompson's age. It was an abuse of discretion for the district court to accept and rely on part of the polygraph (Thompson's statements to the victim's father), while rejecting other parts of the polygraph (Thompson's explanation of his statements about permission for the relationship), and then relinquish jurisdiction because Thompson did not answer a question the polygraph examiner never asked and was never ordered to ask. Because the court relinquished jurisdiction on an ambiguous condition, as in *Le Veque*, it did not reach its decision by an exercise of reason, thereby abusing its discretion.

**B.    The District Court Did Not Err When It Denied Thompson's Idaho Criminal Rule 35 Motion**

Thompson was charged with two counts of felony injury to child, and Thompson pleaded guilty to the charges. For each charge, the district court imposed a unified sentence of ten years, with four years determinate, and retained jurisdiction. Thompson filed an I.C.R. 35 motion, which the district court denied. Thompson appeals and argues the district court abused its discretion when it denied his I.C.R. 35 motion.

A motion for reduction of sentence under I.C.R. 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct. App. 1989). In presenting an I.C.R. 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). Upon review of the record, including any new information submitted with Thompson's I.C.R. 35 motion, we conclude no abuse of discretion has been shown. Therefore, the district court's order denying Thompson's I.C.R. 35 motion is affirmed.

### III.

### CONCLUSION

For the reasons set forth above, the district court abused its discretion when it relinquished jurisdiction. Therefore, we vacate the district court's order relinquishing jurisdiction and remand this case for a redetermination before a different judge as to whether Thompson's sentence should be suspended and he should be placed on probation.

Judge BRAILSFORD **CONCURS**.

8

Judge LORELLO **CONCURS IN RESULT**.